Good morning, Your Honors. Matthew Taggart and Melissa McLaughlin for the petitioner, Dengyi Chen. I will be handling the first five minutes of our argument, and she'll be dealing with the second portions, which concern fear of future prosecution and ineffective assistance of counsel. I think those are all the issues. May it please the Court, with respect to the principal issue in this case, which the immigration judge's findings, which were adopted essentially in full, with the exception of one point, which I'll return to, first of all, with respect to the inconsistencies that gave rise to the adverse credibility finding, they weren't, in fact, inconsistencies, as I think we tried to explain as fully as we could in the opening brief. Well, I guess, though, okay, how are the inconsistencies the IJ identified as a misunderstanding when Ms. Chen prepared her own declaration, a translator verified that she did and didn't say what she did and didn't say, and that the interpreter checked it a second time? So you've got a tough standard of review, and so how do we get to where you want us to get? Well, Your Honor, one of the points that the Court has previously made, and I'm not going to deduct the question, I'll come back to it, is that generally when we're dealing with the translation circumstance, there needs to be closer scrutiny of the record in terms of the assessment of the petitioner's arguments. Counselor, this is the first time I've had a case in all the immigration cases that I've heard where I had two interpreters view the same document and basically conclude that, in this case, the word unconsciousness or consciousness wasn't there. Well, Your Honor, first of all, let's go through each of the inconsistencies that gave rise to the IJ's finding, because I think the petitioner, Chen, is not relying on, certainly not relying on the fact that it was translated. I mean, I think she said, with respect to the omission of unconsciousness, she was unaware of it, correct? Well, I thought the testimony was that she, in essence, gave the story in, I assume it was Mandarin, but in Chinese. Correct. And her friend, who is fluent in both Chinese and English, wrote the declaration in English and then read it back to her in Chinese at the Times, and that she affirmed or adopted that that was correct. And then the court had a different translator look at the document during the merits hearing, and that's a first for me. Usually what you have is a situation where the agency supplied the interpreter during the asylum officer interview, and the alien is saying, well, the agency's interpreter didn't understand or poorly interpreted what I was saying. We don't have that on this record. But Your Honor, ultimately, our argument is not concerning the interpreter or the fact that the word unconsciousness was omitted from the original I-589, which was the asylum declaration. The argument is that the omission is not controlling, and the court has previously held that omissions of a talismanic word, such as unconscious... It wasn't just the word. Where in the declaration is there any sense that she was beaten senseless and stayed out for a period of time? Well, she used the word bailed out in the declaration, as you saw, I think, in the... Somebody used that word. No, it's not an appropriate word. But nothing else. I looked at the declaration and hit my head to the table, saying, and there's a quote, I'm mumbling dizzy and dizzy, the blood flew down my nose, as soon as I sat on the ground, I couldn't stand up anymore, maybe they were tired, otherwise I couldn't stand that any longer. Now, I'm not trying to criticize the grammar. I get from that no sense whatsoever that she's unconscious. I get a sense she is, in fact, conscious, because she's relating how the blood was going down her nose and she couldn't stand anymore, she was tired, and so forth. That's a far different story from, I was beaten up so I was unconscious and days later I wake up in the hospital. And then to add to that, she had a brain scan at the hospital and the medical report says she suffered a light concussion. Well, as our papers point out, your honor, the petitioner was hospitalized from the 5th to the 27th, so you can take the record for what it is, obviously we didn't have the benefit of medical testimony in the circumstance, but petitioner's argument with respect to the omission of the word unconscious is that it's not ultimately controlling with all due respect to... Where's the concept? I'm not looking for the word, I'm looking for where is there in the declaration any sense that she lost consciousness as a result of the beating. I don't get it. I get testimony to the contrary. She seems to be aware of what's happening around her. She's not unconscious. The immigration judge drew great attention to the fact that she made comments about what the officers that she claimed assaulted her had said around the time of the beating. Which if she'd been unconscious, she wouldn't have been able to report. Well, it's not clear from the record that the comments weren't being made simultaneously with the beating that she claimed led to her becoming unconscious. She was specifically asked after her head was struck on the table and then she reported statements by the abusing Chinese police officers. He uttered language, one of the two officers that she claimed beat her uttered language that I won't repeat in the court, but... I mean, you can repeat it quote unquote, but that's a different word, right? That's correct, Judge Callahan, but her position was that it was stated around the time of the beating. The immigration judge's conclusion, as we pointed out in our reply brief, and it's addressed in more detail there and I would draw your attention to it, was that she was trying to say that she heard while she was unconscious this language. I don't think the record reflects that, ultimately. You're eating into your colleague's time there, Counselor Joanne. Let me just conclude, there were three grounds for the immigration judge's conclusion. The first was the baptism. Obviously the judge evinced a doctrinal prejudice, which is not a proper basis for an adverse credibility finding. She explained that it concerned her subjective belief and that she ultimately forgot to include it because she didn't think it was relevant because what matters is what the PRC police believed, not what she thought about her baptism. The other point... You're really not leaving your co-counsel any time. Let me step aside. We know the three points. Thank you, Your Honor. But we do want to give Ms. McLaughlin some time at the batter's box. Thank you, Your Honors. May it please the Court, I will begin with the well-founded fear of future persecution. That was not supported by substantial evidence because regardless of whether the immigration judge felt that the beating and detention constitutes past persecution, it certainly was a beating and she certainly was detained, and those all impact... Well, if she's credible, that... I mean, the problem is you have to believe the story, right? Right, but... So if we uphold the adverse credibility finding, then we would have to conclude that she did not suffer past persecution. What I mean is even if we had to conclude that it did not rise to the level of persecution... Well, we could choose to believe it never happened at all. I mean, that's the problem with an adverse credibility finding. If the witness is not credible, then the finder of fact doesn't have to believe anything the witness says if the record supports that finding. And you need to move forward and deal with the State Department reports, right? Yes. And it would seem that the State Department country reports at best offer a mixed support for the notion that Ms. Chen will be persecuted if she returns to China. The report says that the government generally tolerates small houses, house churches. The report does say that, and that is what the immigration judge picked up on and stated, but the reports go on to say much more than that. And things like there's poor religious freedom, there continue to be crackdowns against underground churches, that underground congregations are harassed, services are broken up and adherents are harassed and beaten and detained and even tortured. So in light of those facts in the country reports, I think that can establish the well-founded fear of persecution, remembering that she only needs to show a 10% chance given that evidence. I don't believe that substantial evidence compels that she does not have that well-founded fear for future persecution. And the last point I would like to address is the ineffective assistance of counsel argument. This is an interesting situation where Ms. Chen was represented at her hearing and her counsel filed the notice of appeal before the BIA, but then Ms. Chen submitted her actual brief pro se shortly afterwards. The BIA sent her the order denying her appeal and noting that her counsel had been suspended. So what does Ms. Chen, what additional information could Mason have elicited to explain the inconsistencies and has she complied with Lizada? Well, addressing Lizada first, at this point Ms. Chen's previous counsel is suspended and has resigned from the California Bar. So I believe Lizada should be excused in this case because under similar circumstances in other cases, it hasn't been required when counsel has already been suspended. But that hadn't happened as of the time that she had received notice, had it? I thought he had been suspended from practice before the board, but I'm not sure. He had been suspended from practice on January 31st, 2008. And then the board made its order on October 30th, 2008. When was he suspended or disbarred by California? He resigned with charges pending from the California Bar and that was following his suspension by the BIA. What's the date? Is it after October? I don't have that date at this moment. But as I understand it, the board looked at, somewhere in the record, there was a statement about the fact that in 2006 when this merits hearing was conducted, he had not been suspended at that point, right? No, at that point he had not been suspended, but the board's order suspending him did note that during 2007, that was when he was being suspended based on another case. Okay. I let you go over about two minutes, but I want to thank you both for handling this pro bono representation. We'll hear from the government. Thank you, Your Honor. Thank you. May it please the Court, Kosei Igamori for the United States Attorney General in this case.  Thank you. This petition for review should be dismissed in part and denied in part for the following two reasons. First, the evidence does not compel the conclusion that Petitioner provided credible testimony. And second, review of Petitioner's ineffective assistance of counsel claim is inappropriate at this time. Petitioner's adverse credibility determination is supported by substantial evidence in this case. As Your Honor pointed out, the Petitioner testified to an entirely different story with respect to her injuries, in contrast to what she stated in her declaration. She stated in her testimony that on June 3rd, she was beaten. She hit her head on. Her head was slammed into a desk. She lost consciousness and did not regain consciousness until June 5th. In her declaration, however, she never mentions that she is unconscious. She states that she may have been dizzy, that she was dizzy, and that she was bailed out to the hospital on June 5th. Certainly, an inconsistency with respect to the gravity of harm is a material discrepancy that substantially would support an adverse credibility determination. Furthermore, so far as the immigration judge also referred to the baptismal, the significance of that discrepancy is not just that the baptismal is missing from the declaration, but again, it tells an entirely different story. In the declaration, as the immigration judge stated, the Petitioner argues, or she states in her declaration, that she was just being introduced to Christianity at the time, and that it wasn't long before she invited people to her house, and thereafter she was allegedly harmed. In her testimony, however, she has a much more substantial involvement with Christianity. She states that she was baptized. She became a full Christian on January 2002. Well, if we separate these out, do you have to have all of these together in order to substantiate the adverse credibility, or does just one do it? If I understand your question correctly, Your Honor, if there's one inconsistency that goes to the heart of the Petitioner's claim, then that is sufficient to support an adverse credibility determination. And this Court has stated that several times in Chocho v. INS as well as recently. Well, do you think there's one that does here, or do you need both? Well, the — Let's say, let's just assume hypothetically that whether you're baptized or whether you say you go, that maybe that wasn't a major inconsistency. Is the unconscious enough on its own, or do you need the — The unconscious is on its own sufficient, Your Honors. And the inconsistency with respect to her involvement with Christianity further supports the adverse credibility determination. And with respect to the unconsciousness, the Petitioner did admit that there was an inconsistency in her administrative appellate brief. She stated that it might have been an embellishment, but minor discrepancies should not be held against her, even in her opening brief. I believe she did not deny that the inconsistency existed, only that the record supported that she received such a severe beating that she was unconscious. And, in fact, they, I believe in their opening — in their supplemental brief, stated that the — that her testimony with respect to the gravity of harm she received is inconsistent with a claim of — with the medical report stating that she only suffered a light concussion. But that's exactly what the medical record states here, is that she suffered a light concussion, Your Honors. But the medical records also put her in the hospital for 20 days. That is true, Your Honors. But it's all trying to glean what the — I'm not sure what to make of that. It could be that she hadn't paid her bill, or maybe they understand light differently than me. I don't know. I mean, here, if you, like, you know, you're on death's door one day, and the next day they say, you've got to go, our insurance won't pay anymore. There may be different incentives that are not in the record that could explain why she was in the hospital for a long time. But what is in the record, what is in the medical reports, is that she suffered some wounds and a light concussion. And it's inconsistent with her claim that she was unconscious from June 3rd to June 5th after her head was slammed against the table. And, furthermore, her explanation was not what the petitioners argued in their briefs. Her explanation during testimony was that after she had her head slammed, she was asked, well, how could you know if you were unconscious what these policemen were telling you at the time? And she did not say, at the time my head was being slammed, at the same time she was being told these things. What she said was, well, I wasn't completely unconscious. So she reneged a little bit on her claim of unconsciousness. So petitioners' arguments not being evidence, of course, and looking at petitioners' — Right. Okay. All right. You wanted to get to the IAC claim. Yes. The IAC claim in this case. This Court lacks jurisdiction to consider it, Your Honors. And that's because Petitioner only alleges IAC before the immigration judge. On appeal to the Board of Immigration Appeals, then, although Petitioner was pro se, she was, in order to vest jurisdiction in this Court, required to exhaust the ineffective assistance of counsel claim on appeal to the Board of Immigration Appeals. She did not. And therefore, her only recourse is to file a motion to reopen with the Board and not through this Court, Your Honors. In Mendez-Mendez v. McCasey, for instance, this Court clearly stated that where a person has an opportunity to exhaust the IAC claim but does not do so on appeal to the Board of Immigration Appeals, this Court lacks jurisdiction to review that claim. And so that contrasts with the previous case that was discussed here, where the Petitioner alleged IAC both before the IJ and the BIA. If there are no further questions, the government submits on review. Very well. Thank you. Even though you burned up all your time, I'll give one of you a minute on rebuttals. I think I should give it to Ms. McLachlan. No, no, no, no. It's your choice. Your choice. You two can fight it out. Only for the purpose of returning to the unconsciousness issue, I think it's significant. The government's position is that the omission of the word unconscious justifies the judge's findings. Look at the entirety of the record. One of the three reasons was rejected entirely by the BIA. It was so ridiculous. The language in that the May 31st arrest happened early on, he said there had been five or six meetings, and on its face that was a very narrow conclusion that made the BIA so uncomfortable. They rejected it entirely, and it's not before this Court. Well, they rejected the baptism issue, alluding to that line of cases that talks about making us, the IJs making assumptions about what are central tenets of a religious faith, but I don't think they said anything about the inconsistency between the number of meetings, did they? Let me draw your, it's in footnote four on page 19 of the opening brief. I would just draw the Court's attention to it. The IJ pointed to one purported inconsistency between Chen's statement and her asylum declaration that, quote, it wasn't long that I invited the people to my house for the family gathering on May 31st when the policeman broke into my house. And he said she'd had five or six meetings, so it wasn't long, and five or six meetings had to be an inconsistency. Number one, it's not an inconsistency. Number two, the BIA rejected it. But it goes to the overall credibility of its findings. It was a result in search of a justification. The other thing, the baptism for multiple reasons. She mentioned it concerns her subjective belief, and she had an explanation for it. First of all, it's a doctrinal issue that's already been rejected by this Court. So we're left with what counsel for the government focused on, which is the omission of the word unconsciousness. He says it's enough. The hospital records describe, as he put it, multiple injuries. I would draw the Court's attention to the record. Mr. Taggart, you're repeating yourself, and you're now two minutes over. I apologize. That's all right. Thank you, Your Honor. I do again want to thank you for handling it. The case was very well argued. It is submitted for decision, and we'll get you an answer as soon as we can. Thank you, Your Honor. Thank you.
judges: Tallman, Clifton, Callahan